IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

EDWARD W.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:18-cv-01454-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 11), the Commissioner's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Plaintiff Edward W. filed his application for supplemental security income (SSI) on September 15, 2014 and alleged disability beginning on July 22, 2013. His claim was denied initially on January 22, 2015 and upon reconsideration on August 21, 2015. Edward filed a request for hearing concerning his SSI application

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 7) on the docket.

on December 18, 2015. A hearing was held before the Honorable Kathleen Winters (ALJ) on July 17, 2017. At that hearing, Edward was represented by an attorney and Edward as well as a vocational expert (VE) testified. Following the hearing, Edward's claim was denied on November 17, 2017. His request for review by the Appeals Council was denied on October 19, 2018, making the ALJ's Decision the final decision of the Commissioner. Edward filed the instant civil action seeking review of the ALJ's Decision on December 24, 2018.

## II

At the hearing, Edward was 49 years old and lived with his cousin in an apartment. He claimed the following conditions limited his ability to work: can't read/write; spine and neck injury; and nerve damage. AR 209. While Edward was being transported as a prisoner in the Illinois Department of Corrections in July 2013, the driver had a seizure, lost control, and hit a pole. AR 325. Edward, who was unrestrained, was thrown into the windshield and sustained disc herniations in his cervical and upper thoracic spine. Plf's MSJ (Doc. 12 at pg. 2). He subsequently underwent a cervical fusion with bilateral decompression of the spinal cord and nerve root surgery in October 2013. AR 301.

The ALJ initially asked Edward's attorney whether he considered the record complete. The attorney answered:

> Your honor, we have an outstanding request to OSF Prompt Care, Glen Park. We are not clear whether or not there is any evidence to be received from there. Other than that, the record is complete. One note that I would like to make is that we did submit several pieces of evidence on the 7th, and looking through the file, we did submit several depositions from the claimant's civil claim versus the State of Illinois – I take that back. They're in the file, your honor.

AR 40. The VE responded: "I was going to say, that's awesome. So okay. All right. And we did get your letter about that outstanding evidence. Let me ask

2

you this. What do you think that evidence is going to show us?" *Id.* The attorney answered that it was "not clear that there will be any objective findings that are inconsistent from what we see so far in the file" and further answered "[i]t would merely compound the evidence that we've already submitted into the file." AR 41. The attorney confirmed further that it was his "expectation" that the information was, as the ALJ suggested, "just going to add further evidence to what we already have." *Id.*

Thereafter, Edward was questioned by the ALJ. Edward testified about his past work and also the fact that he worked after the accident in 2013. After the 2013 accident, he "did a little bit of work for the landlord where [he] was working, living at to try to pay for [his] rent. But [his] back was not letting [him], allowing [him] to – " AR 44. He said he "just, [he] couldn't do it" because of his balance and he was afraid he was going to get hurt. AR 45. He had not applied for any jobs since 2013. As for the apartment in which he lived with his cousin, Edward testified there were "maybe" 30 or 35 steps going to his apartment. AR 47. He said he used the city bus "a couple times." AR 49.

Edward testified that his back was his most serious problem. He explained he had "a lot of screws and pins and plates and then fusions" in his neck area. AR 50. He said doctors had to cut through all his nerves to get to his spine to do surgery on it, and subsequently, if Edward did not take a "special medicine" (for which "they don't pay for now") he twitched and stumbled "really bad." AR 51. He said when he walked he sometimes "jig jagg[ed]." *Id.* He mentioned "they" wanted to replace his left knee, and he quit doing physical therapy for his back because his legs were so bad. *Id.* Edward also testified that he could "hardly read and write." *Id.* While he graduated from high school, he was in special education all of his life.

3

He next explained his back bothered him from his neck down through his lower back. He said doctors wanted to do surgery on his lower back due to a herniated disc, but the doctor instead wanted to give it some time to try a spinal cord stimulator to help with the pain. Edward provided insurance no longer paid for his fentanyl patches which were what "really helped [his] back mainly." AR 53. His medications took "a little bit of the edge off[.]" AR 58.

As for his legs, Edward testified that his left knee had been bad for a while, that he had a few surgeries done on it, and that over time it became bone on bone from wear and tear. He said it popped out "all the time" and knotted up on him. AR 54. He said he had the surgery for his left knee all set up but then he was unable to have it as his health care insurance "dropped out of the Obama care." *Id*. He said it was "probably" right that his reading level was at the sixth grade level. AR 55. He clarified that the medical record which indicated he previously smoked his fentanyl patches was not correct. He confirmed he relapsed and had used cocaine in May 2016. Since then, Edward said he had been clean.

Edward believed that since July 2013 his neck had started to sag a lot such that he could hardly hold it up. He again mentioned that his legs interfered with physical therapy that was suggested for his neck. "They want me to get my knees fixed, these physical therapists because it's like, you know, they give me the stuff to do but when I'm standing, I mean, my legs get weak and they just start, you know, wiggling or wobbling real bad." AR 58. Edward estimated he could "probably" stand for 20 minutes. *Id*. Edward also testified his cousin did most of the cooking, if he could do the dishes or sweep the floor he would, and there were times he had done the laundry. "[B]ut going up and down those steps with big laundry baskets and then going back down another set of steps to a laundry room, it gets, you know, to my legs and my back, too." AR 61.

Edward's attorney then asked him how he managed grocery shopping. Edward answered that he would walk with a cart and his family usually helped him with bagging it "and stuff." AR 62. As for navigating stairs, Edward testified that it was "hard for [him] to actually bend [his] legs up, going down, but [he had] the railing . . . it pulls me up." AR 62-63. He said he was in the process of moving to a flat level house because it was hard from him to "do all this work[.]" AR 63. He said he was unable to watch a whole movie because he became disrupted by his pain. Edward estimated he could walk about 20 minutes before he would have any difficulty. He said he could probably walk one city block and then he would start to feel it in his back.

Edward further testified that his neck pain shot down his right shoulder which his doctor thought may be a pinched nerve in his back. His left arm became numb all the time and tingled. Things just fell out of his hand. His foot still tingled three or four times during a two-week period. His left-hand numbness or tingling occurred almost every day. He elaborated upon the odd jobs he previously did for his landlord and said he did those jobs on his own time. Since his cervical surgery, Edward said his body "just hurts all the time," it was like he was "in a bind," and his pain was unchanged in that "[i]t's always been painful." AR 67.

The VE was then questioned.

### III

In her Decision, the ALJ determined Edward had the following severe impairments: status post cervical spine fusion; degenerative changes to the cervical and lumbar spine; status post ACL rupture of right knee; foraminal stenosis at L4-L5 and status post displaced fracture of L2-L3; patellofemoral chondromalacia of the right knee; adjustment disorder with mixed depression; anxiety; and, substance abuse. AR 21. At Step Three, the ALJ discussed Edward's work history, the fact he had been incarcerated for many years for burglary and

released in September 2014, the details of his December 2014 Function Report, his mother's December 2014 Third Party Function Report, his hearing testimony, and certain medical records. The ALJ also detailed the consultative internist's December 2014 examination of Edward, the clinical psychologist's December 2014 mental status examination, and the evidence pertaining to Edward's mental impairments. Much of the medical evidence to which the ALJ cited was the results of radiographic imaging dated between December 2014 and April 2017. The ALJ also discussed emergency room records from September 2015 for lumbago, from May 2016 for abdominal pain, and from June 2016 for chest pain.

> The ALJ made the following residual functional capacity (RFC) finding:
>
> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb stairs or ramps, but can never climb ladders, ropes, or scaffolds. He can occasionally balance, and can never kneel or crawl. Must avoid concentrated exposure to respiratory irritants, such as fumes, dusts, odors, gases, and poor ventilation. Must avoid workplace hazards such as moving machinery, unprotected heights, or commercial driving. With work that can be learned in 30 days or less, with simple routine tasks and only simple work related decisions. All written communications is [sic] at the 6th grade reading level or less.

AR 27. To support her RFC finding, the ALJ explained: "First, the objective medical evidence is not consistent with the claimant's allegation of disability . . . Furthermore, the claimant's description of daily activities belies the allegation of complete and total disability." AR 27. The ALJ emphasized that Edward climbs "the 30 stairs to his apartment, and he uses public transportation. This involves walking, standing, and sitting; he walks to a bus stop, stand waiting for a bus, sis [sic] while riding a bus, and then walks to his destination after departing from the bus." *Id*. The ALJ also pointed to the fact no treating, examining, or reviewing physician or other medical source reported Edward as disabled or unable to

perform light duty work activities, and that Edward did not have disabling side effects due to medication and was generally treated with conservative measures since the application date. The ALJ determined the State Agency reviewing medical sources' opinions could not "be afforded substantial probative value," and Edward's mother's Third Party Function Report deserved "little weight in so far as it relates to the claimant's [RFC] and ability to work." AR 28. As for the latter, the ALJ determined that the report was "not reflective of the claimant's true abilities." *Id*.

### IV

Edward argues: 1) remand pursuant to the sixth sentence of 42 U.S.C. § 405(g) is warranted because the Commissioner failed to exhibit and consider relevant evidence that Edward submitted: 2) the ALJ reached an unsupported RFC assessment and failed to address evidence establishing greater limitations; and 3) the ALJ improperly discounted Edward's subjective symptom allegations.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Edward claims error on the ALJ's part at Step Four.

### A

Edward argues that remand is warranted pursuant to the sixth sentence of 42 U.S.C. § 405(g) because the Commissioner failed to exhibit in his record the transcript of a December 2016 deposition of his pain specialist, Kevin Henry, M.D., which was taken in Edward's suit against the State of Illinois concerning his 2013 injury.[2] The Commissioner counters that Edward has not established that the evidence is "new," and, in fact, the ALJ reasonably relied on the statement from Edward's attorney at the hearing that Dr. Henry's deposition evidence was compound and did not add anything new to the record. Sentence Six of 42 U.S.C. § 405(g) provides in relevant part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing

---

[2] What does appear in the record is Edward's hearing attorney's cover letter to SSA dated May 26, 2017 which included a description of Dr. Henry's deposition testimony. AR 274-75. Edward attached the deposition transcript to his Motion for Summary Judgment. *See* (Doc. 12-1 at pgs. 1-11).

9

> that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

Put simply, "sentence six authorizes a district court to remand without ruling on the merits in two circumstances: when (1) the Commissioner requests a remand before filing her answer and demonstrates good cause, or (2) there is evidence that is new and material, plus a showing of 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *DeGrazio v. Colvin*, 558 F. App'x 649, 652 (7th Cir. 2014) (quoting 42 U.S.C. § 405(g)). "New" evidence is that which was not in existence or available to the claimant at the time of the administrative proceeding. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

As an initial matter, Edward disputes the Commissioner's reading of the hearing transcript, arguing instead that the transcript provides Edward's attorney was referring to outstanding treatment records when he referred to the evidence as "merely compounding" the evidence already in the file. Read liberally, the hearing transcript is open to both sides' interpretations. However, in the end that dispute is not determinative in light of the analysis set forth *infra*.

Edward argues that Dr. Henry's deposition should be deemed "new" because the SSA's failure to exhibit it deprived Edward of the opportunity to have it considered. Edward cites no authority for that proposition. Dr. Henry's deposition testimony is simply not "new" as that term is defined for purposes of Sentence Six. It was both in existence and available to Edward at the time of the administrative proceeding; his counsel submitted it on May 26, 2017 and noted at the July 2017 hearing that "several depositions from the claimant's civil claim versus the State of Illinois" were submitted. AR 40. Because Dr. Henry's deposition is not new, the Court is not authorized to remand under the second circumstance articulated in Sentence Six.

10

Edward also argues in support of remand that SSA's failure to enter Dr. Henry's deposition into the record cannot prevent him from meeting his burden to show "good cause." The Court notes that another district court within the Seventh Circuit determined that Sentence Six does not permit remand due to the incompleteness of the record on a plaintiff's motion. *Acevedo v. Barnhart*, 474 F. Supp. 2d 1001, 1004 (E.D. Wis. 2007). Rather, "under the plain language of the statute such a remand may be granted only on the Commissioner's motion." *Id*. In light of the analysis in *Acevedo*, it is recommended that Edward's Sentence Six remand request be denied not only because the evidence is not "new" but also because this Court lacks authority to remand on a *claimant's* contested motion that the record is incomplete.

B

Edward also argues that because the ALJ discarded the State Agency reviewing medical sources' opinions, her RFC was based only on her own lay analysis of Edward's limitations. He contends that the later-admitted evidence underscores the importance of obtaining an updated medical opinion as an ALJ may not play doctor by making her own independent medical findings. The Commissioner disputes that the ALJ played doctor and argues Edward does not point to any relevant evidence that contradicted the ALJ's RFC finding. Instead, the Commissioner argues the ALJ more than adequately considered the medical evidence related to Edward's knee problems, considered the evidence related to his neck impairment, and evaluated the medical opinion evidence.

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a). The determination of RFC is "an issue reserved to the SSA" and is made based upon consideration of the entire record, "including all relevant medical and nonmedical evidence." *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (citing 20 C.F.R. § 416.945(a) and 20 C.F.R. §

11

416.927(e)(2)[3]). Here, both parties recognize that the determination of a claimant's RFC is an issue for the ALJ, but Edward disagrees that the ALJ stayed within the proper bounds in assessing his RFC.

Edward is correct. In her Decision, the ALJ explained that she "considered the medical opinions provided by treating sources, examining sources, as well as non-treating sources." AR 27. She referred explicitly to the State Agency medical sources' findings and determined those findings:

> are not supported by the complete medical record; multiple medical evidence documents have been admitted to the record since state agency reviewing medical sources assessed the claimant capable of performing substantial gainful activity in January and August 2015 . . . In addition, testimony has been received from the claimant and a [VE]. Therefore, the [RFC] determined herein supplants that of the state agency, because the current [RFC] assessment is based on all the evidence of record including evidence not before the state agency. The assessments of state agency reviewing medical sources therefore cannot be afforded substantial probative value[.]

AR 28. Notably, Edward argues in his summary judgment motion that the reviewing State Agency medical sources did not have access to some 2014 evidence or to any from after February 2015. The ALJ cited only two medical records dated before February 2015: the consultative internist's December 2014 examination and a December 2014 right knee MRI. The ALJ then proceeded to discuss medical records dated April 2015 through April 2017. The post-February 2015 evidence included office visit notes (including examination results), cervical spine MRI results, emergency room records, lower thoracic and lumbar spine CT scan results, lumbar spine MRI results, knee MRI results, cervical spine CT scan results, and right shoulder x-ray results. Later in her Decision, the ALJ explained that Edward's allegation of complete and total disability was inconsistent with the

---

[3] This provision appeared at 20 C.F.R. § 416.927(d)(2) at the time the ALJ in this case issued her Decision.

objective medical evidence and pointed to radiographic imaging which showed "mild degenerative spinal column changes but no evidence of a disc herniation or nerve root involvement" and "other anatomical abnormalities, but none have been reported to be severe." AR 27.

There is a fine line between an ALJ considering medical evidence for purposes of fulfilling her duty to determine a claimant's RFC and an ALJ playing doctor in her consideration of that medical evidence. "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (explaining that ALJ's mistaken reading of MRI evidence illustrated why "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves"). In this case, the ALJ crossed the line.

While the ALJ stated that the State Agency reviewing medical sources' assessments could not "be afforded substantial probative value," the ALJ essentially did away with them entirely; she expressly stated that her RFC finding supplanted that of the State Agency because it was based upon all the evidence of record "*including evidence not before the state agency.*" AR 28 (emphasis added). That is problematic as the ALJ therefore considered as a layperson the bulk of medical evidence that was not before the State Agency reviewing medical sources. There were no medical opinions in the record to which she pointed (as worthy of weight or no weight) which also considered any or all of that same medical evidence which was not before the State Agency. In support of her RFC assessment, the ALJ emphasized that radiographic imaging showed "mild" results and anatomical abnormalities not reported to be "severe." The ALJ necessarily played doctor by taking such radiographic imaging results and exalting them over

13

other medical evidence of record to conclude they showed Edward was not completely and totally disabled insofar as the objective medical evidence showed.

  As is clear from the ALJ's Decision, the ALJ considered medical evidence pertaining to Edward's complained-of knee issues (both left and right), cervical spine, and lumbar spine, and such medical evidence included more than just radiographic imaging. The State Agency assessments were outdated by the time the ALJ considered the radiographic imaging upon which she placed emphasis in support of her final RFC assessment. The Commissioner argues that it is unclear why Edward, who was represented by counsel during the administrative proceedings, did not submit opinions from his own doctors to support his claim of disability. However, it remained the ALJ's duty to both develop the record and to remain within the proper bounds in her consideration of the record. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (stating that while the claimant bears the burden of proving disability, the ALJ has a duty to develop a full and fair record and the duty is enhanced when the claimant is *pro se*). Had the ALJ consulted a medical expert for an updated opinion, the Court's analysis may have been much different. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (explaining the MRI results in the record may have corroborated the claimant's complaints or they may have lent support to the ALJ's original interpretation, "but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion" and commenting the ALJ had "many options" to avoid playing doctor including by seeking an updated medical opinion). But that is not what happened here, and the Court accordingly recommends remand for the ALJ to obtain an updated medical opinion as to the impact of Edward's physical impairments on his ability to perform work.

### C

Lastly, Edward argues that the ALJ erred when she discounted his subjective symptom allegations because she misrepresented the evidence and her reasoning does not withstand scrutiny. Edward argues in particular that the ALJ misrepresented the objective evidence and improperly played doctor in analyzing it, misrepresented his reports of his activities, and failed to explain what about the lack of "disabling" medication side effects and only "conservative" treatment meant about the credibility of his allegations.

Because Edward argues the ALJ's subjective symptom evaluation was erroneous, in part, because the ALJ misrepresented the objective evidence, the Court additionally recommends that upon remand the ALJ re-evaluate Edward's subjective symptoms after proper consideration of the medical evidence of record (i.e., after the ALJ obtains an updated medical opinion). *See* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").

### V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 11) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on December 20, 2019.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE